on behalf of the Appellant, Mr. Richard Grossman, on behalf of the Appellee, Mr. Stephen A. Whittle. Mr. Grossman. Good morning, Your Honors. I'm going to please the Court. My name is Richard Grossman. I represent Maria Tercio of Sanford Children, both in her capacity as an individual and as the Special Administrator of the State of Nelson, New Jersey. The issue in this case, which plaintiff anyway would insist is a matter of first impression in the State of Illinois. That was going to be my first question. Are there any cases in Illinois that specifically have applied an intervening cause analysis in the case of the tort of intentional affliction of emotional distress? I am not. I'm not. I don't believe that there are any cases which would have applied the intervening. Well, there's just been no fact scenario that's arisen in this that's identical or even close to this one. So that's why we would suggest that it is a matter of first impression. You would acknowledge over negligent cases where there's been a suicide, the independent intervening cause analysis has been applied? Absolutely. Over and over. And I'm sure he's going to tell us that, and we should adopt that rule here. Yes. And you're going to say we shouldn't. That's correct. Okay, so what are we talking about then? No, go ahead. Well, the basic premise of our brief is that in every case from other jurisdictions and even in the federal courts in which this has been the issue and has received a plenary hearing, the result has been that this action, the action for a wrongful death where it has been shown that the defendant's intentional actions have been a substantial factor in bringing about the suicide of the tort victim, that those actions have been allowed. So you're saying the weight of authority in other jurisdictions as well as the federal case, which we have reviewed in Northern District of Illinois, held that the intervening cause did not apply under these circumstances, correct? That's correct. The basic, I think, overarching principle to be distilled from the cases that we cite, and there are seven of them, and I believe they're all from Supreme Courts of other states, Supreme Court of Indiana, Wyoming, New Hampshire, California, are that there is a significant, meaningful, and qualitative distinction between an intentional tort and negligence. And so, for instance, I'm walking down the street, I'm on the sidewalk, someone's on their phone or being distracted by music or whatever and hops the curb. As a result, they don't see the curb and they hit me. I become paraplegic and unable to deal with that situation, I commit suicide. I will confess that on those facts, I don't have a case in Illinois. However, if I'm walking down the street and someone with whom I previously had a dispute is driving their car and sees me and says, well, I'm going to get that guy and intentionally heads his car into my body. And as a result, I become paraplegic and then, unable to cope with that, I commit suicide. I say that the law in Illinois should be, because the law everywhere else is, that a claim for wrongful death may be maintained by my estate, or I've committed suicide. And there seems to be some public policy underpinnings that recognize the qualitative difference of somebody being negligent and somebody intentionally inflicting harm on someone else. That's correct. Let me ask you this. Did the trial judge articulate a specific, what was her ruling based on when she dismissed those counts other than Illinois has never heretofore recognized it? Did she give any additional specific legal reasons why she would not recognize the cause of action? I believe the order which eventuated in this appeal says, the court having found after argument that under Illinois law, and this is at appendix, page two of our brief, that under Illinois law, there is no cause of action for wrongful death via suicide or survival claims. The case of Collins v. Woodbridge, which is the federal district court case from Judge Canelli that we cite, is an older federal case and is not persuasive in this matter. Well, correct me if I'm wrong, wrongful death can be based upon different theories of the court, can it not? Yes. Can it be based on negligence? Of course. Can it be based upon an intentional force? Yes. And if it is, will we have different results for wrongful death such that her ruling appears to, if you accept the other states' rulings, was addressing negligence and not willful and wanton or intentional acts? Well, if you look at the materials that we submitted, this case arises on a motion to dismiss. And we cite Judge Canelli's case, among others, for the principle that you've got to recognize that there is a distinction between negligence and intentional tort. And you've already sustained, we said, Judge, you've already sustained our claim for intentional infliction of emotional distress. So, obviously, the conduct here has led to the emotional distress of the plaintiff and the decedent. So, obviously, there's intentional tort at work here, and there needs to be a distinction when you consider whether our case should be dismissed. Other than what's written in the order, did Judge Mullen indicate orally from the bench why she was doing this or not? I was there, and I, we argued, both sides argued their position, and Judge Mullen said, I'm going to sustain counts one through, because it was a second amended complaint. So she had, so the whole complaint was under challenge. I'm going to sustain counts one through three. I'm dismissing counts four and five. Please draft an order. And then, as a matter of fact, we actually asked her to state the basis, and she said, I find that the case that you cite was not persuasive, and that in Illinois, there can be no claim for wrongful death where there's been a suicide. And then she memorialized that in the order, and that was it. That's correct. Okay. All right, we just wanted to see if there was some other rationale given. I, that, if, well, this, my opponent is not, was not the party, was not the person that was there, so I don't know. Well, he'll be able to tell us. I'm sure. I'm sure. All right, let me ask, let's jump ahead. I have a feeling they're going to argue, because they already did this brief, that Illinois has ruled on this by analogy, and they cited this Martin v. Heinholz Commodities case, which was, I believe, a fraud case. That's correct. And I believe that he's going to contend the Supreme Court held that Martin, that all torts, including intentional ones, require the proximate cause analysis, thereby arguing by analogy that it still applies in the case of emotional affliction, of emotional distress, and therefore Illinois has already ruled on this issue. So what sayeth you in response to that? All right, well, first of all, I believe that what the court said specifically there was that in intentional torts such as fraud, they use that phrase, and the whole, that whole discussion that takes place, that's, that, that the appellee's brief cites, takes place in the context of torts that are based on deceit. And the, that whole branch of law that it deals with, they were, what they were discussing was in, right there, was the consumer fraud law, and that you can't have fraud without consequences. But I will read to you from Martin v. Heinhold at page 46, 45 and 46, where it says, Plaintiffs next argue that Heinhold's deception was intentional, and that even remote causation will be found in intentional torts, citing the case. This is the Supreme Court. And then they say, Plaintiffs note that intentional tort feasors are commonly liable even for unforeseeable consequences of their conduct. They cite another case. And then they don't say, well, that's not the law. They don't say that. What they say is, what we believe in this case is that plaintiffs' willingness to assume risks in a volatile market was the more direct cause of their investment losses than the misrepresentation that, that induced them to buy these commodities options in the first place. So what, in other words, they, even the Supreme Court in Illinois acknowledges that the law is that it is commonly held, or commonly liable, even for unforeseeable consequences of their conduct. Like I said, they don't cite those, those arguments and then go on to say, well, that's never been the law in Illinois, or we don't agree, or, but what they say is, in this case, we're not going to apply that, those principles, because we find that their loss was not the, the, the function, or it's not derived from what the defendant did. Okay. But was what the plaintiffs did. They undertook a risk that negates any of these claims. So you're saying, actually, it supports your argument. That's correct. There's, there's language in Martin v. Heinle that cites the principle that even remote causation, where there's an intentional tort, will result in liability. Or at the very least, his, his holding would be, or his interpretation would be, would have to be dicta in the context of the case, because they never specifically ruled around this tort. Of course. Exactly. And it, and it seems to me that the torts that they were talking about were uniquely, that the discussion is uniquely around the issue of deceit torts. And they, and especially in the context of the Consumer Fraud Act, they don't want people to be just willy-nilly arguing that, you know, I've been injured and I can't show how I've been injured. And there's, again, a qualitative difference between deceit, negligence, and intentionally harming someone. Exactly. So if that's, in sum, you're arguing that Martin is not controlling here. That's correct. And, and, and in fact contains language which, which supports our theory. Is Martin not controlling because the facts are distinguishable? Or because the holding is inconsistent with your position here? No, I believe that the facts are, in other words, that, that the issue of whether I buy a commodity option, and whether you actually are destroying the building that I'm living in, are so different that they don't control. And so that, so that the discussion in Martin is really kind of limited, or at least as, as Justice Hudson points out, is, is. You're basically saying the analogy fails. That's correct. That's correct. And in this case, I think what we want to tell the court, I think of utmost importance, is to, is that, is that our society imposes liability because we want, not just because we're a society of rules, and we like rules, and if you, if you violate the rule, then we're going to get you. It's because we want to deter the conduct that is, that has been committed. I'm sure all, all of your honors are familiar with Paul's graph. I was thinking about that three minutes ago and saying it's a classic distinction between what you're arguing, what is set forth in Paul's graph. Well, if you look at Paul's graph, what we say, what Paul's graph held was there's some negligence at one end of a railroad station. The person at the other end gets hurt. No possible way that the person's, that even the negligent person could have foreseen that that person over there would have gotten hurt by what they did. So that we're going to cut off the liability. Now, the reason they didn't sue the scale maker, right, even though it's obvious that if the scale never existed, Mrs. Paul's graph would not have been hurt, right, is because that would have been over deterrence. There's nothing about the making scales, right, even heavy scales, that is inherently dangerous or would, or that the scale maker could foresee would cause damage to Mrs. Paul's graph. That would have been over deterrence. What we say is if someone intentionally does something, if the man carrying the package onto the train were to say, well, I'm going to play a prank and I'm going to move over towards Mrs. Paul's graph and scare her, right, even though he couldn't, he probably wouldn't have intended that the scale would fall over because he doesn't realize that maybe the fireworks are that potent. Nevertheless, that intentional conduct, he's going to be liable, it's our position, if the scale falls over and kills Mrs. Paul's graph or injures her or as a result of her injuries, she becomes paraplegic or something. If that was reasonably foreseeable, whereas the other end of the platform is not. Actually, I believe, Your Honor, that we would say that foreseeability is simply not involved here. It's what this court has, and I point out in a case that this court has decided, in which the ruling is all that's necessary is for you to intend the act when it's an intentional act. You don't have to intend the consequences. Well, in Paul's graph, I don't believe that the fireworks were ignited by intent. I think it was done. Exactly. It wasn't in Paul's graph. So that if someone had intentionally lit the fireworks, regardless of wherever it was, he didn't have to necessarily stand next to her. Exactly. Then Paul's graph could have been different. I will also, and I know my time is up, but I just want to say this. Paul's graph, they make a distinction in all of the places in Paul's graph where they say at least where it's not intentional or willful. So in Paul's graph, they draw the distinction. Mr. Rehfeld, did you study Paul's graph in law school? Please don't ask me any questions about Paul's graph because I have not read it in 39 years. You're not familiar with Andrew's dissent in Paul's graph? No, I'm not. You're kidding. You missed it? I think so. So if you do question me on Paul's graph, I'm going to have to. Okay, we won't get into Paul's graph. May it please the Court. Approximate cause in Illinois has got two separate elements to it. One is cause in fact and one is legal cause. Defendant's conduct is deemed to be the cause in fact of a plaintiff's injury if the injuries, if the conduct was a substantial factor in bringing about the injuries. That's basically the substantial factor test that the plaintiff is speaking about in his appellate's brief. Legal cause is a question of foreseeability. An injury is held to be foreseeable to a defendant and therefore a legal cause of the plaintiff's injuries if it is the type of conduct that a reasonable person would see as the likely result of his or her actions. So you're saying the concept of approximate cause applies to attentional torts. That's really the problem with what you're saying. Yes, I am. Well, that's one of the things I'm saying. But that's right. That's my first argument in my brief is that there aren't any suicide cases in that area. But there are a number of intentional tort cases where the traditional two-pronged concept of approximate cause has been applied to measure the liability, if you will, of the defendant tort feasible. What's your response to him citing, and I think you'd have to agree, there's a plethora, there's a number of cases. Clearly the trend in other jurisdictions is to allow this cause of action under these circumstances. And the federal case that was alluded to, the trial judge felt it was not necessarily controlling. But the weight of foreign authority in the restatement clearly favors this. Do they not? No. In this situation? No. Why are you taking that interpretation? Well, let me go through the cases he cites one by one. But let's start with the first one, I think, the oldest one, is that Tate case. It's one out of the California Court of Appeals. What the court in Tate said was that they will allow a cause of action for the suicide of a plaintiff's deceased in certain circumstances. But the circumstances that they talked about were that the conduct of the defendant had to not only be intentional, but the defendant also had to perform his intentional conduct with the specific intent to cause serious mental distress or serious physical suffering to the plaintiff's deceased. In fact, I'm going to quote a little part out of Tate. And what the court in Tate said was, this rule would not apply where the act of the defendant was intentionally done, but there was no intent to cause injury. It is applicable only where the actor intended to cause injury and the injury is a substantial factor in bringing about the suicide. This complaint does not allege that the defendants intended to cause injury to the plaintiff. Well, did the case go out, did the judge rule based on the merits of the pleadings, or did the judge rule there's no such cause of action? Yeah, there's a big distinction. I see what you're saying, but I don't think that answers the question. There's a difference between what is pled and whether or not the cause of action is recognized as a matter of law. So you're getting into specific facts in Tate, but they did recognize the cause of action. This case could go out later on some type of a motion saying it doesn't fit within the parameters of this type of an action. But isn't that different than whether or not the cause can be recognized at all? Well, no, you still have, in order to plead a cause of action, you have to meet, your pleas have to meet the elements of that cause of action. And that's what the court in Tate is saying what has to be in the complaint to meet it. And this one doesn't. No, I don't know, excuse me. Did Judge Mullin sustain certain complaints or counts in the complaints? There are three counts of the complaints still standing in the trial court. And do any of them allege intentional infliction of emotional distress? Yes. Isn't that an intentional tort? And if it is, then what you're really saying is that there's no cause of action recognized in the state of Illinois relative to causing suicide, despite the fact that the trial court judge found that at least there's been pled a proper cause of action in intentional tort. It's more than that because... Well, have you ever seen the movie Gaslight? We're not going to call you on Paul's behalf, but we're billing you on Gaslight. Oh, I don't believe so. Ingrid Bergman is a wife who her husband is trying to make go insane through some strange things happening in the house, and the gaslight is turned up and down as a precursor for many of these things. And his intent was to make her go mad and either have her institutionalized or have her commit suicide or maybe murder her under a situation that would look like she committed suicide. So here's a factual situation. Would you agree that if he was successful and she did, in fact, commit suicide, that maybe her escape might have a cause of action against him? Well, not having seen Gaslight, I'm somewhat of a disadvantage. Go and watch it and send me a supplemental email. But anyway, the point is that I think what you were saying in response to Justice Hudson's comments were that the facts in this situation were intentional acts of eviction and destruction of stairs and so on and so forth, but there was never an intent to force someone to commit suicide. Is that correct, or did I misread what you were saying? Intentional conduct, but not an alleged intentional tort. I do not believe there's any alleged intentional tort in either Counts 4 or 5 of the complaints. Well, then what is intentional infliction of mental or emotional distress? Now, you might have noticed that in the Appellee's brief, I argued that Count 4, that's the wrongful death count, does not contain the allegations that are in Counts 1 and 5. 1 and 5 are both clearly trying to state causes of action for intentional infliction of emotional distress. Those allegations in the stripped-out Count 4, and that's what I saw, I argued in the Appellee's brief, Count 4 doesn't state a cause of action for intentional, doesn't even try to state a cause of action for intentional infliction of emotional distress. The plaintiff, when the plaintiff filed her reply brief, she admitted as much. She said it's not trying to state a cause of action for intentional infliction of emotional distress. I think I can quote out of the brief, give me a second here, that the plaintiff in the reply brief states, Count 4 is a claim for wrongful death, not a claim for intentional infliction of emotional distress. In another point in that brief, the plaintiff states, the claim that the plaintiff is making in Count 4 is not for damages for the intentional infliction of emotional distress, but that the defendant's intentional actions were a substantial factor in bringing about the suicide of the plaintiff's decedent. So intentional infliction of emotional distress has specific requirements. You have to allege extreme and outrageous conduct. That's not in Count 4. In fact, it's been deliberately stripped out of Count 4. You can see purported attempts in Counts 1 and 5 to allege extreme and outrageous conduct, not anywhere in Count 4. Well, if what you say is accurate, then why didn't the judge dismiss it without prejudice? Because it seems that what the judge did was state there was no cause of action recognized, as opposed to saying that there's no cause of action pled. Exactly. Well, I can't speak for Judge Mullin. Well, what does the order say? The order doesn't say that there's no cause of action for wrongful death were the suicide of the plaintiff. Not that the count didn't plead it, as you said. There is no cause of action, period. Correct? Yes. All right. That's what the order says. That's important to clarify. But it goes farther than that. I mean, I believe the judge was correct when she said there's no cause of action for suicide. Because there are these negligence cases. Clearly, there aren't any intentional tort cases in Illinois regarding a case where the plaintiff had committed suicide. But there are a number of negligence cases. And those all hold that the act of suicide is not a foreseeable event. That's that second prong, that second element of the proximate cause analysis. If it's not foreseeable, it's not the legal cause of the damages and, therefore, not the proximate cause. So the cases that the plaintiff is relying on all strip foreseeability out. All strip foreseeability out. But we have a number of intentional tort cases here in Illinois, Martin being one of them, but not the only one. And I'll talk about a couple others here in a second. That does not strip foreseeability out when measuring the liability of an intentional tort fee. Justice Hudson, you had mentioned the issue of the cases involving intentional infliction of emotional distress. There are a couple of first district cases, intentional infliction of emotional distress cases, where the court held that in order to plead and prove a cause of action for intentional infliction of emotional distress, the plaintiff had to show that the defendant's conduct was both the actual and the probable cause of the plaintiff's injuries. That language about probable cause would not have been there if we were just talking about a substantial factor type of analysis and all you had to do was a but-for type of analysis. Wouldn't that be relevant if the decedent committed suicide because just prior thereto, there was an auto accident and his entire family had been wiped out, and then there would be a question of fact as to whether or not he committed suicide because he was evicted or whether he committed suicide because his family had been wiped out in a two- or three-car accident? I don't really see the distinction. The distinction is probable cause analysis. You said probable cause. Probable cause means causation, doesn't it? My point is that if the testimony or the facts or the evidence establishes that reasonable minds would preponderate and determine that someone committed suicide because of the emotional trauma of what they've experienced in an illegal eviction, vis-a-vis watching their family incinerated in a drunk driving accident, then the jury gets to decide whether or not the causation was the eviction or the causation was the accident or whether they both were causes. But the point is that when you start talking about what's probable cause, I'm suggesting to you that's a factual issue that is not a motion to dismiss with prejudice. Well, at least not on the pleadings. I don't think the question of what elements, whether you use a two-prong analysis or a one-prong analysis, is a factual issue. The question is do you have to prove foreseeability in an intentional tort case or do you not? Like in a negligence case, clearly you do. In the cases that I cite in here regarding intentional torts, I think you do also. Foreseeability is a factor. In the plaintiff's cases from other, from the California case, and there's one from New Hampshire, Indiana, Wyoming, those cases strip out foreseeability. Right. Illinois doesn't. At least it hasn't yet. Foreseeability is still an element of proximate cause. Can we agree at least on this? I want to try and pin you down, and I think I have to. I want your honest answer. Has any Illinois court, appellate or Supreme Court, specifically ruled on these facts of the pleading of intentional infliction of emotional distress? Suicide is considered to be an intervening cause such that there is no liability. There is no Illinois case charging the defendant with an intentional tort where the plaintiff, that the injury alleged is suicide. Okay, we can agree on that. But there are several intentional infliction of emotional distress cases where the plaintiff didn't die, but the alleged conduct of the defendant is similar to what we have here. When you said they died. They didn't die. They didn't die. You're right. That Duffy case that we cite out of the first district, that was a case where the plaintiff was a condominium unit owner. The condominium association kicked the plaintiff out of her unit, forced her to move out. They said that there were some type of emergency repairs that had to be, I don't know exactly how they got her up. There were some emergency repairs that had to be made. She had to move out in order for them to make them. So they kicked her out of the unit. She was out for a year. During that one-year period of time, not only did the condo association not do the repairs that they had told her they were going to do, they stripped her entire unit, pulled all the carpeting out of it and threw it away, took every cabinet in the place out, threw that away. So then when she got the unit back, it was a wreck. It was an uninhabitable wreck. She filed a complaint charging the defendant with intentional infliction of emotional distress. That was a First District case. The First District said those allegations are not sufficient to allege a cause of action for intentional infliction of emotional distress. The conduct alleged is not extreme and outrageous, sufficiently extreme and outrageous to rise to the level. But that's a pleading issue, as he was alluding to. That has really nothing to do with the cause of action. In any event, your argument here is that suicide is a supervening or intervening event to block the liability. Since nobody died there, how is that case on point? There's no supervening independent event in this case you talked about, was there? In order to maintain the wrongful death action, the defendant has to be charged with a tort. And so far, the defendant isn't charged with a tort. Is it your point with respect to count four that plaintiff didn't sufficiently allege anything, let alone? Not only didn't sufficiently allege it, deliberately did not allege it. Took the allegations from counts one and five out of count four, the allegations related to the intentional infliction of emotional distress. Under the whole theory, in order to get... I'm curious, how do you know that he intentionally did it as opposed to... Because the allegations were specifically incorporated by reference. All the allegations are laid out. In other words, at one time they were incorporated and then later on... They're incorporated into count five, not into count four. So I think the allegation... I can't remember the paragraph numbers exactly, but they were like 22 to 24. And in count five, they pull in count... paragraph 22 to 24. In count four, they stop at paragraph 20. So it was... I don't know why... They didn't run out of ink, is what you're saying. Excuse me? They didn't run out of ink. Correct. Yes, I am saying that. Any other questions? No. Thank you. I'd like to address that last point first. I think that's a critical issue. How do you address that? So what I say in my reply brief and also I have a copy of my complaint I'm standing in front of here. And what we did in this complaint was to allege paragraphs one through 20 and then say, as a result of the wrongful acts of defendant described above, Nelson Caceres committed suicide. In the allegations one through 20, they are replete with facts that demonstrate that my clients were... and anxious and so forth. In paragraph 13, if you look at the complaint, it says both... What these are are the notes of the caseworker that was assigned to them and helping them negotiate through or navigate the situation. Both Ricardo and Maria expressed that they are depressed, anxious, and angry. They feel that management is not willing to work with them. Both Ricardo and Maria appear to be defeated. So just by understanding, you're saying you attempted or tried to incorporate by reference the earlier allegations of the infliction of emotional distress. What we... They're correct when they say that I did not or the plaintiff did not incorporate the allegations that related to... that you look at and you see count one, intentional infliction of emotional distress. In paragraph 27, we say, defendant's conduct in forcing Maria and her family out of their validly rented apartment by demolishing the building around them and then demolishing the rented premises even while she was living there in reckless pursuit of an economic goal, despite the human consequences, is extreme and outrageous conduct which cannot be tolerated in a civilized society. That's because you have to allege that. Is that incomparable? It's not incomparable. But the reason it's not incomparable... I mean, if counsel's correct, then you can never have a wrongful death case in an intentional situation unless you've alleged emotional distress. I don't believe that's the law. In other words, what we've said is, here's what happened in this case. They did this, they did that. And then we say, as a result of these wrongful actions, the plaintiff's deceit and committed suicide. Are they wrongful or intentional? Well, they're intentional and we... And you say that in count four? I mean, I think that's really the gist of this one. Well, we say that they are wrongful acts because this is a wrongful death case. The word intentional is... Are they intentional? What I'm saying is if you... No, just let me answer. Your Honor, the short answer is I did not use the word intentional. I don't believe. I'd have to review the whole paragraphs one through 20. Well, there never was a wrongful death action that required an intentional act. It was a wrongful death action. And you had to state a cause of action. You had to state a basis for relief. And it could be murder. Right. It could be, you know, joint suicide, possibly. It could be driving a car into another car. It could be negligence. It could be intentional tort. Right. So what I'm saying is that what we believe that the complaint conveyed was, look what happened here. These people, I mean, they're in their house, and there's somebody chewing through the outside of the building while they're in there. I don't know. That's not negligence. It's nobody's idea of negligence. But we're talking about pleadings here, not ultimate facts. I would... Right? I agree. This is 2615. It's what you plead. That's correct. And what I would say is that the court, Judge Mullen, did not rule that we did not plead a sufficient cause of action because, in fact, she gave us two times to amend the complaint. And I'm sure she would have given us a third. There was no delay. Well, and that's the key. She didn't grant the motion on a defective pleading or failure to state cause of action. She said it's not recognized. That's correct. There is no such cause of action, period. That's fundamentally different than granting it on the pleadings. Right. In other words, if Judge Mullen had wanted me to say, or instructed me, you didn't say intentional, I want you to put in the complaint intentional, and then I'll sustain it or whatever. She's not your coach. I mean, she granted a 2615. I understand. But when we were before the first time, I had pled actually, I had actually said over $50,000 or whatever. You're not supposed to say that. So she's directed me. She said, I'm ordering you to take that out of there. In other words, she was, Judge Mullen was telling you how to correct the complaint. The deficiencies that she saw in the first two instances that we, in any event. You mean the first two complaints? The first two complaints. The first two counts. The first two complaints. This is a Second Amendment complaint. So she did or did not tell you in the second complaint what was wrong with count four? No. She said in her ruling that it doesn't state, that there can be no cause of action when there's suicide for wrongful death. That's what it says. That's what the order says. That's what she said after we argued. Irrespective of the pleading, there can be no cause of action. Well, you're adding a few words. I think the first time when you stepped up here, you read the order. Yes, sir. And I didn't recall it saying. Can you read it one more time for the rest of us? Sure. I'm recognizing that I'm out of time, but your Honor's wanting me to do this. Roll tape. It's. Take a minute. Okay. It's appendix two, page two. The court having found after argument that, A, I mean these are actual numbers, A, under Illinois law, there is no cause of action for wrongful death via suicide or survival claims. B, the case of Collins versus Woodbridge is an older federal case and is not persuasive in this matter. The court rules that as a matter of law, there is no cause of action for suicide. That's what it says. Okay. Thank you, Your Honors. We ask that the order that dismissed the case be reversed. Thank you. Court's adjourned.